F. T. JOHNSON, APPELLEE, V. JOHN BARTON PAYNE, DI-RECTOR GENERAL OF RAILROADS, APPELLANT.

FILED DECEMBER 30, 1922.   No. 22155.

1. Carriers: SHIPMENT OF LIVE STOCK: LOSSES: BURDEN OF PROOF. Where live stock, unaccompanied by a caretaker, is received by a carrier in good condition and when they arrive at destination a number of the animals are dead, the burden of proof is upon the carrier to show that the loss. resulted from some cause which would exempt it from liability. .

2. ——: ——: IMPROPER EQUIPMENT: CONTRIBUTORY NEGLI-GENCE. It is the duty of a carrier ·to furnish proper cars for shipment of live stock,. and when an improper car is furnished, unless in exceptional cases, the shipper is not guilty of con-tributory negligence in loading his stock in the car so furnished.

3. ——: LOSS OF LIVE STOCK: INSTRUCTIONS: NEGLIGENCE. Where, in an action for damages for loss of live stock, contributory negligence of plaintiff is pleaded and evidence is received tend-ing to support the allegation, it is the duty of the court, upon its own motion, to instruct the jury on the law of contributory and comparative negligence, and it is error to refuse a request of defendant thereon.  ·

4. ——: ——: ——: MEASURE OF DAMAGES. It is error to instruct the jury that the measure of damages in such case is the value of the animals as stated in the contract of shipment; the measure is the fair market value of the stock lost at the time and place where they should have been delivered, less any amount received for the carcasses.  ·

5. Appeal: WITNESSES: COMPETENCY: MARKET VALUE. The ques-tion of the competency of a witness to testify as to the market value of personal property rests largely in the discretion of the court, and an affirmative ruling thereon, where abuse of discre-

tion is not shown, will not be reviewed upon appeal, when the objecting party fails to request the privilege of cross-examination of the witness before the answer is received.

APPEAL from the district court for Franklin county: WILLIAM A. DILWORTH, JUDGE. *Reversed.*

*John F. Cordeal, Elmer E. Whitted* and *John L. Rice,* for appellant.

*W. H. Miller* and *Relihan, Relihan & Reed, contra.*

Heard before MORRISSEY, C. J., ALDRICH, LETTON and DEAN, JJ., REDICK, District Judge.

REDICK, District Judge.

Plaintiff brings this action to recover damages sustained to a shipment of 55 hogs which he delivered to defendant at Riverton, Nebraska, in good order, and of which 23 were dead upon arrival at Kansas City, the death of which hogs he alleges was due to the negligence of defendant carrier. Defendant answers, admitting the shipment, denying all allegations of negligence, and alleging that if any of said hogs died in transit their death was caused by the natural propensities, viciousness, and inherent weakness of the animals, the weather conditions then prevailing, and the negligence of the plaintiff. These allegations are denied in the reply. Plaintiff claimed damages in the sum of $1,246.83, and the trial to the court and jury resulted in a verdict for the plaintiff for $1,132.73, and the defendant brings the case here on appeal. A large number of errors are assigned and all have been considered, but we will discuss only such assignments as seem to require attention.

Objection is made that the court in the statement of the case omitted to mention the general denial of negligence contained in the answer. This was probably an oversight; but, as the case was tried all the way through upon the questions covered by such denial, the error was not prejudicial.

Objection is made to instructions Nos. 2, 3, and 4:

"No. 2. If plaintiff has convinced you that all of said animals were in good healthy condition when delivered to the defendant at Riverton for transportation to Kansas City, then the burden is upon the defendant to convince you by a preponderance of the evidence that the death of said animals resulted from the natural propensities, weakness, viciousness. or characteristics of said animals, and not from any negligence or fault on the part of the defendant or defendant's agents, or by reason of something that the defendant could not prevent by the exercise of ordinary care and prudence, or that it resulted from some neglect or fault of the plaintiff or his agents.

"No. 3. The evidence in this case shows that the defendant received this car-load of hogs at Riverton, Nebraska, for transportation to Kansas City, Missouri, and that upon arrival at destination 23 of said animals were dead.

"If you believe from the evidence that said shipment was delivered to the defendant in good condition, then the defendant must show and explain the cause or reason of the loss or damage occurring to said shipment during the transportation.

"No. 4. You are instructed that, where it is shown by the evidence that live stock is delivered to a railroad company for transportation in good condition and is delivered at destination in a damaged condition, or a portion of it is lost or destroyed, then it devolves upon the railroad company to show that said loss or damage was not the result of any negligence on the part of the railroad company, but was due to the fault of the shipper or some act of God, or to the inherent propensities or natural character."

Defendant's first objection is that, on account of the repetition contained in the instructions as to the burden of proof, too much stress was given to that feature of the case. It would have been better had the various matters covered by the three instructions been included in

the first one so that repetition in the respect complained of would be avoided, but we cannot see that defendant was prejudiced as claimed.

Defendant further objected that the instructions do not state the proper rule governing the burden of proof in this class of cases, it being argued that, when evidence is produced by defendant sufficient to sustain a finding that the loss was brought about by causes for which the carrier is not responsible, the presumption fails, and cites *Nye-Schneider-Fowler Co. v. Chicago & N. W. R. Co.*, 105 Neb. 151, which case so holds; but there was nothing in the evidence in that case which connected the death of the animals from disease with any neglect of the defendant. It was shown that the animals died from arthritis and other natural causes which from their very nature could not be traced to negligence of the carrier, while in the case under review the death of the animals is shown to have resulted from over-heating resulting in congestion of the lungs. The claim of the plaintiff is, and there is evidence tending to show, that the overheating was caused by the character of car furnished by the defendant, and failure of the defendant to take proper care of the shipment in transit. Whether the overheating resulted from natural causes, the kind of car furnished by defendant, lack of care in transit, or negligent overloading by plaintiff were questions of fact for the jury. Moreover, the instruction complained of is substantially within the law as laid down in that case by Flansburg, J., as follows: "Where it appears that live stock, unaccompanied by a caretaker, is received by a railroad company in good condition and delivered later to the consignee in a damaged condition, a *prima facie* case is made against the railroad company, and the burden is upon it to show that such damage resulted from some cause which would exempt it from liability"—citing *Church v. Chicago, B. & Q. R. Co.*, 81 Neb. 615, and *Chicago, B. & Q. R. Co. v. Slattery*, 76 Neb. 721. These cases declare the law of this state that, where stock is

not accompanied by a caretaker and loss or damage in transit is shown, the burden of proof is upon the defendant to show that the loss was occasioned by a cause for which it is not responsible.

Objection is made to instruction No. 5 in the following words: "You are instructed it was the duty of the defendant to furnish a proper car for the transportation of said animals, and that if defendant failed so to do, and the shipper was compelled to accept said car for said shipment and the defendant accepted said shipment in said car, then the defendant is estopped from claiming that said car was not proper for transporting said animals."

It appears from the evidence that plaintiff requested that he be furnished a car for a shipment of hogs and the agent of defendant notified him that the car was ready, and plaintiff, with the assistance of his neighbors, thereupon loaded 11 wagon-loads of hogs and drove them about 11 miles to the railroad stock-yards, and, when shown the car furnished by defendant, objected that it was a horse car and was boarded tight half way down, only the lower half being slatted. He was informed by the agent that, if he wanted a different car, he would have to wait until he could get one, but no other car was immediately available and the time when one might be obtained was uncertain, so the plaintiff loaded the car to which he had objected, and defendant now claims that by so doing plaintiff was guilty of contributory negligence, and that the court should have submitted that question to the jury. We are unable to sustain this contention. It was the duty of the defendant to furnish a proper car for the shipment of hogs (*Chicago, B. & Q. R. Co. v. Williams*, 61 Neb. 608; *Allen v. Chicago, B. & Q. R. Co.*, 82 Neb. 726; we do not decide whether or not the car in question was a proper car), and defendant, having notified the plaintiff the car was ready, cannot put the burden upon plaintiff of either refusing that car or waiting an indefinite time for another one after having

brought his shipment to the railroad as above detailed. Defendant cites quite a number of cases, the majority of which we have examined, and especially the three upon which defendant principally relies are clearly distinguishable from the case at bar. In *Otrich v. St. Louis, I. M. & S. R. Co.*, 154 Mo. App. 420, the plaintiff had a choice, and he selected the car in question in place of another one offered by defendant's agent. In *Coupland v. Housatonic R. Co.*, 61 Conn. 531, the plaintiff was offered a special box-car at a higher rate than the one he selected, and it was held that under those circumstances he assumed the risks incident to the use of the car he selected. In *Gilleland & Dillingham v. Louisville & N. R. Co.*, 119 Ga. 789, the plaintiff accompanied the stock as caretaker, and it was held that plaintiff having affirmed the contract with knowledge that the car to which he objected was being used for the transportation of his stock, and as his only claim for injuries to the stock in transit arose from omission of precautions which, under the contract, devolved upon the plaintiff, the court held it was not error to direct a verdict for the defendant.

Instructions 7 and 9 are as follows:

"No. 7. You are further instructed that, if the plaintiff overloaded said car, and the defendant discovered said fact and had opportunity to remove said condition in time to prevent loss or damage to such shipment and failed to do so, the defendant is liable for all damages resulting from failure to remedy such conditions."

"No. 9. You are instructed that, if you find from the evidence in this case that the plaintiff is entitled to recover, you should return a verdict for such an amount as will compensate him for all damages sustained, not exceeding the amount prayed for in his petition; and in arriving at such amount you will be governed by the value of the animals set forth in the contract for transportation, to wit, $60 per animal, less any amount received by him for the carcasses."

Defendant urges two objections to these instructions: (1) That they withdraw the questions of contributory and comparative negligence from the jury; and (2) that they state an improper measure of damages. We think both of these objections are well taken. Contributory negligence of plaintiff was pleaded, and the evidence was conflicting upon the question whether or not plaintiff had overloaded the car and thereby contributed to causing the animals to become overheated, making it a question for the jury. The jury should have been instructed by the court on its own motion upon the law of contributory and comparative negligence, which it entirely failed to do. The only reference to this defense is contained in the last 15 words of instruction No. 2, above quoted; but the jury were not told what to do in case they found all or part of the damage "resulted from some neglect or fault of the plaintiff." *Hunt v. Chicago, B. & Q. R. Co.*, 95 Neb. 746. Defendant's request (No. 3) on this point should have been given.

Instruction No. 9 is not only erroneous for the reasons just stated, but because it submitted an incorrect rule of damages; the measure in these cases is the reasonable market value of the hogs lost at the time and place where they should have been delivered. *Hunt v. Chicago, B. & Q. R. Co., supra.* Whatever may have been the federal rule in interstate shipments (in which class this belongs) prior to the Cummings amendment of March 4, 1915, (38 U. S. St. at Large, ch. 176, p. 1196), the rule is now as above stated. *Chicago, M. & St. P. R. Co. v. McCaull-Densimore Co.*, 253 U. S. 97. It happens in this case that the amount of damages computed by the correct rules does not differ substantially from the amount of the verdict, and the error might be disregarded but for the error in failing to instruct upon contributory and comparative negligence.

It is claimed the court erred in permitting plaintiff to testify as to the fair market value of the hogs at Kansas City. The record is as follows: "Q. Now, Mr.

Johnson, do you know the reasonable value of those hogs
at Kansas City on the 13th day of March, 1918? De-
fendant objects for the reason that the witness has not
shown himself qualified to answer. Objection overruled.
Exception. A. I do. Q. You may state what it was.
Defendant objects as incompetent, irrelevant and imma-
terial, and no foundation laid. A. $16.65 per 100."

The objection to the first question was properly over-
ruled, because a man is always the best qualified person
to state what he knows; and objection to the second
question was also properly overruled, because the ques-
tion being one of fact, not an opinion, and witness being
a stock shipper who is presumed to have some knowledge
on the subject of the market value of hogs, and having
testified that he did know the foundation was sufficiently
laid *prima facie.* If defendant desired to test his means
of knowledge before receiving the answer, he should
have requested the privilege of cross-examining the wit-
ness on that point, which doubtless would have been per-
mitted, with the result in this case the answer would
have been excluded, as the subsequent cross-examination
so clearly showed the evidence incompetent that the court
would have stricken it out upon motion (defendant coun-
sel's statement that this was done at page 18 of the
record is inaccurate). Evidence of plaintiff as to num-
ber of dead hogs and their proceeds should have been
excluded, as he had no personal knowledge on that sub-
ject.

Instruction No. 7 is erroneous in placing upon defend-
ant the absolute duty to remedy the condition of over-
loading. The evidence on this point is conflicting, and
it could not be known in advance whether damage would
result. Under these circumstances we think the de-
fendant was chargeable with ordinary care in transpor-
tation, taking the car as it found it.

One of the questions of fact was whether or not the
hogs should have been drenched while in transit. Witness
Duncan testified on cross-examination that he did not

drench them; he should have been permitted on redirect to explain why he did not; the evidence was conflicting as to the necessity or propriety of drenching at that time of year.

There being no question of unreasonable delay in transportation, instruction No. 11 should have been omitted.

Whether the plaintiff negligently overloaded the car, and, if so, whether such negligence contributed to the loss and in what degree, were questions for the jury, which, if found against the plaintiff, would entitle defendant to a verdict, or a reduction of damages, and it follows that, for error of the court in failing to instruct the jury on contributory and comparative negligence, the judgment must be reversed.

                                REVERSED AND REMANDED.